UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JORDAN MARKS, individually and on behalf of all others similarly situated<br><br>Plaintiff,<br><br>v.<br><br>CRUNCH SAN DIEGO, LLC,<br><br>Defendant. | Case No. 14-cv-00348-BAS-BLM<br><br>**ORDER:**<br><br>1. **GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF 8)**<br><br>2. **TERMINATING DEFENDANT'S MOTION TO EXCLUDE THE OPINIONS AND TESTIMONY OF JEFFREY HANSEN AS MOOT (ECF 37)** |

On April 4, 2014 Defendant Crunch San Diego, LLC brought a Motion for Summary Judgment. For the following reasons, the Court **GRANTS** Defendant's motion.

## FACTUAL BACKGROUND

Defendant Crunch San Diego, LLC ("Crunch") operates gyms in San Diego, California, as well as in several other states. Compl. ¶ 3, ECF 1. Plaintiff Jordan Marks entered into a contractual relationship with Crunch sometime before

November 20, 2012. *Id.* Crunch uses a third-party web-based platform administrated by Textmunication to send promotional text messages to its members' and prospective customers' cell phones. Def.'s Mot. Summ. J. 2:12–14, ECF 8. The phone numbers are inputted into the platform by one of three methods: (1) when Crunch or another authorized person manually uploads a phone number onto the platform; (2) when an individual responds to a Crunch marketing campaign via text message (a "call to action"); and (3) when an individual manually inputs the phone number on a consent form through Crunch's website that interfaces with Textmunication's platform. Aesefi Decl. ¶¶ 3–7, ECF 8-3. Users of the platform, including Crunch, select the desired phone numbers, generate a message to be sent, select the date the message will be sent, and then the platform sends the text messages to those phone numbers on that date. Mot. Summ. J. 2:22–25. The system then stores these numbers in case the user wants to notify the prospective customer or member of a later offer. Aesefi Dep. 34:22–25, June 26, 2014, ECF 24-3. On the specified date the platform sends the message to a Short Messaging Service ("SMS") gateway aggregator that then transmits the message directly to the cell phone carrier.[1] Ex. 4, Pl.'s Opp'n. ¶3, ECF 24-6. Marks alleges he received three unwanted text messages from Crunch between November 20, 2012, and October 18, 2013. Pl.'s Opp'n. 3:22–23, ECF 24. This Motion for Summary Judgment turns upon the issue of whether or not the platform used by Crunch may be classified as an Automated Telephone Dialing System ("ATDS").

## LEGAL STANDARD

Summary judgment is appropriate on "all or any part" of a claim if there is an absence of a genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("*Celotex*"). A fact is material when, under the

---

[1] SMS is a standardized protocol for sending short text messages to cellular phones.

governing substantive law, the fact could affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. *See Celotex*, 477 U.S. at 323–24.

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. "The burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial." *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006) (citing *Celotex*, 477 U.S. at 324).

A genuine issue at trial cannot be based on disputes over "irrelevant or unnecessary facts[.]" *See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Similarly, "[t]he mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient." *Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995) (citing *Anderson*, 477 U.S. at 252).[2] The party opposing summary judgment must "by [his or her] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P 56(e)). That party cannot "rest upon the mere allegations or denials of [his or her] pleadings." Fed.R.Civ.P. 56(e).

When making its determination, the Court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *See*

---

[2] *See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (if the moving party meets this initial burden, the nonmoving party cannot defeat summary judgment by merely demonstrating "that there is some metaphysical doubt as to the material facts").

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment." *Anderson*, 477 U.S. at 255.

## DISCUSSION

**1. The undisputed facts show that Defendant did not use an ATDS to send text messages.**

Defendant argues that the platform it uses to send promotional text messages is not an ATDS as defined by 47 U.S.C. § 227(a)[3] of the Telephone Consumer Protection Act ("TCPA") because it lacks the capacity to store or produce telephone numbers to be called using a random or sequential number generator. Mot. Summ. J. 4:25–28. If Defendant's system is not an ATDS, The TCPA does not apply and summary judgment should be granted, dismissing all TCPA causes of action with prejudice. The Court finds that Defendant's system does not incorporate an ATDS.

An ATDS is equipment that "has the capacity (A) to store or produce numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." TCPA, § 227(a)(1) (1991).

The Federal Communications Commission ("FCC") does not have the statutory authority to change the TCPA's definition of an ATDS. The statute defines an ATDS in § 227(a)(1). Section 227(a), in contrast to § 227(b) and (c), does not include a provision giving the FCC rulemaking authority. *Compare id. with* §§ 227 (b)(2) and (c)(2). Furthermore, § 227(b) and (c) expressly limit the aforementioned rulemaking authority to only those subsections.[4] It is therefore

---

[3] Unless otherwise stated, all further statutory citations are to 47 U.S.C.

[4] Section 227(b)(2) provides that "the [Federal Communications] Commission shall prescribe regulations to implement the requirements of this subsection." Section 227(c)(2) provides that "the

undeniable that any FCC attempt to modify the statutory language of § 227(a) is impermissible. The FCC itself adheres to this, using the statutory definition of ATDS in their regulations. *See, e.g.*, 47 C.F.R. § 64.1200(f)(2).

Even so, the FCC has issued commentary interpreting the definition of ATDS broadly as "any equipment that has the specified *capacity* to generate numbers and dial them without human intervention regardless of whether the numbers called are randomly or sequentially generated or come from calling lists." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991* 27 F.C.C.R. 15391, 15392 n. 5 (2012) (emphasis in original). However, this interpretation does not bind the courts. In *Satterfield v. Simon & Schuster, Inc.,* the Ninth Circuit found the definition of an "ATDS" "clear and unambiguous." 569 F.3d 946, 951 (9th Cir. 2009). Because it is "clear and unambiguous," the FCC's 2003 statutory interpretation of an ATDS is not binding on the Court. *Id.*; *See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837(1984). Further, the FCC's definition is not predicated on the plain language of the statute, but is instead based on policy considerations.[5]

Courts have defined "capacity" in the context of an ATDS as "the system's **present**, not **potential**, capacity to store, produce, or call randomly or sequentially generated telephone numbers." *Gragg v. Orange Cab Co.*, 995 F.Supp.2d 1189, 1193 (W.D. Wash. 2014) (emphasis in original). The *Gragg* court expressed concerns that focusing on potential capacity would encompass many modern

---

Commission shall conclude the rulemaking proceeding initiated under paragraph (1) [of section (c)] and shall prescribe regulations to implement methods and procedures for protecting the privacy rights described in such paragraph."

[5] Even if the interpretation was binding or convincing, the FCC's interpretation dealt with predictive dialers and not third-party text messaging platforms like the one at issue here. *See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 18 F.C.C.R. 14014, 14092 (2003). The portions of the FCC's decisions in 2008 and 2012 that Plaintiff cites to both refer back to the 2003 FCC sections regarding predictive dialers. *E.g.*, *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991* 23 F.C.C.R. 559, 566 (2008); *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991* 27 F.C.C.R. 15391, 15392 n. 5 (2012).

devices and potentially subject all smartphone and computer users to the TCPA, which would be an "absurd result." *Id.* Because these modern-day devices are easily programmable, anyone who uses a computer or smartphone would be subject to the TCPA. *Id.*[6] It seems unlikely that Congress intended to subject such a wide swath of the population to a law designed to combat unwanted and excessive telemarketing. Additionally, *Gragg* clarified that "sequentially generated telephone numbers" are those that are numerically sequential, such as (111) 111-1111, (111) 111-1112, and so forth. *Id.*

"Random or sequential number generator" cannot reasonably refer broadly to any list of numbers dialed in random or sequential order, as this would effectively nullify the entire clause. If the statute meant to only require that an ATDS include any list or database of numbers, it would simply define an ATDS as a system with "the capacity to store or produce numbers to be called"; "random or sequential number generator" would be rendered superfluous. This phrase's inclusion requires it to have some limiting effect. When a court construes a statute it should, if possible, do so as to prevent any clause, sentence, or word, from being superfluous or insignificant. *Alaska Dep't of Envtl. Conservation v. Envtl. Prot. Agency*, 540 U.S. 461, 468 n.13 (2008); *Cooper Indus., Inc., v. Aviall Services Inc.*, 543 U.S. 157, 166 (2004) (courts are "loathe" to render part of a statute superfluous). It therefore naturally follows that "random or sequential number generator" refers to the genesis of the list of numbers, not to an interpretation that renders "number generator" synonymous with "order to be called."

The platform used by Defendant does not have the present capacity to store or produce numbers to be called, using a random or sequential number generator,

---

[6] It is even more concerning that under the FCC's interpretation, any phone featuring a built-in phonebook could have the present capacity to qualify as an ATDS. Any device permitting a person to initiate an SMS or voice call from a database without actually dialing the number itself arguably has the "capacity to store or produce numbers and dial those numbers [...] from a database of numbers." 18 F.C.C.R. 14014, 14091 (2003).

1   and to dial those numbers. Numbers only enter the system through one of the three
2   methods listed above, and all three methods require human curation and
3   intervention. None could reasonably be termed a "random or sequential number
4   generator." Mot. Summ. J. 2:25–26. Thus, because the Textmunication platform
5   lacks a random or sequential number generator, it is not currently an ATDS.

6         Undisputed facts show that the system also fails to have the potential
7   capacity to become an ATDS. In *Sherman v. Yahoo! Inc.*, the court found a similar
8   SMS system to be an ATDS because Yahoo! could potentially write new software
9   code adding a sequential or number generator to the system. 997 F.Supp.2d 1129,
10  1136 (S.D. Cal. 2014). In contrast, here Defendant uses a third-party platform that
11  audits its user's accounts pursuant to an "Anti-Spam Policy."Aesefi Dep. 60:7–21.
12  Textmunication explicitly bans inputting numbers into its system without either a
13  response to a call to action or "written consent." Aesefi Dep. 31:16–5. Therefore
14  the undisputed material facts show that even if potential or future capacity is fairly
15  included in the definition of ATDS, Defendant's contractual obligations preclude
16  such a finding in this case. Because Defendant's access to the platform is limited, it
17  similarly lacks the future or potential capacity to become an ATDS.

18        The Ninth Circuit, in *Meyer v. Portfolio Recovery Assocs. LLC.*, deferred to
19  the FCC and found a predictive dialer to be an ATDS because it has "'the *capacity*
20  to dial numbers without human intervention.'" 696 F.3d 943, 950 (9th Cir. 2012)
21  (quoting 18 F.C.C.R. 14014, 14092 (2003)) (emphasis in original). The court noted
22  that a predictive dialer "'is equipment that dials numbers and, when certain
23  computer software is attached, also assists telemarketers in predicting when a sales
24  agent will be available to take calls. The hardware, when paired with certain
25  software, has the capacity to store or produce numbers and dial those numbers at
26  random, in sequential order, or from a database of numbers.'"[7] *Meyer*, 696 F.3d 943

27  ---

28  [7] The 2003 FCC Report & Order describes predictive dialers. In most cases, telemarketers program the numbers to be called into the equipment, and the dialer calls them at a rate to ensure

1  at 950 (quoting 18 F.C.C.R. 14014, 14091 (2003)).

2  In *Meyer,* challenges to the FCC's authority to interpret the statute were waived because they were not raised at the district court level. *Meyer*, 707 F.3d at 1044. Here, the Court is able to address the argument and has addressed its merits. The Court finds that the FCC has no authority to modify or definitively interpret any language in § 227(a) of the TCPA.

Even though this Court finds the FCC's unauthorized interpretation of an ATDS overly broad, the system present here is factually distinct from the system described in the FCC comment.[8] Predictive dialers use an algorithm to "predict" *when* a telemarketer will become available to take a call, effectively queueing callers for the telemarketer. They are neither the database storing the numbers nor a number generator creating an ephemeral queue of numbers. However, database or number generator software is frequently attached to automatic dialers, thereby creating the "potential capacity" to become an ATDS. Here, there is no potential that the system could be modified to include a random or sequential number generator, and it therefore does not qualify under *Meyer*.

**2. Defendant's motion to exclude the opinions and testimony of Jeffery Hansen is moot.**

As in any matter before the Court on summary judgment, the Court first determines if there is a dispute of material fact. If not, the Court applies the law to the undisputed facts and may grant or deny summary judgment. Here, expert testimony opining on legal questions is irrelevant and therefore not a basis for this

---

that when a consumer answers the phone, a sales person is available to take the call. The principal feature of predictive dialing software is a timing function, not number storage or generation. These machines are not conceptually different from dialing machines without the predictive computer program attached. 18 F.C.C.R. 14014, 14092 (2003).

[8] This Court concurs with the *Gragg* court that the statutory interpretation suggested by the FCC is both underinclusive and overinclusive and should not be relied upon by courts. It is overinclusive because any cellular phone with group messaging or conference call features has the present capacity to dial multiple numbers from a database, either as text messages or voice calls. It is underinclusive because systems could be artfully developed to circumvent the FCC's comment.

Court's ruling. Expert opinions are only relevant on a motion for summary judgment if it helps determine the existence of a dispute of material fact, a situation not present here. *See Celotex*, 477 U.S. at 324. Accordingly, because the Court did not take into account the expert declaration, Defendant's motion to exclude the declaration of Jeffrey Hanson is **TERMINATED AS MOOT**.

## CONCLUSION

Accordingly, for the foregoing reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment and **TERMINATES** Defendant's Motion to Exclude the Opinions and Testimony of Jeffery Hansen as **MOOT**. The Court **DISMISSES** this matter in its entirety **WITH PREJUDICE.**

**IT IS SO ORDERED.**

Dated: October 23, 2014

_____
Hon. Cynthia Bashant
United States District Judge