1
2
3
4
5
6
7
8
9
10

**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian. Esq. (SBN: 249203)
ak@kazlg.com
Jason A. Ibey, Esq. (SBN: 284607)
jason@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

[Additional Attorneys On Signature Page]

*Attorneys for Plaintiff,*
JORDAN MARKS

KAZEROUNI LAW GROUP, APC
Costa Mesa, California

11
12

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| | |
|---|---|
| **JORDAN MARKS, Individually and On Behalf of All Others Similarly Situated,**<br><br>**Plaintiff,**<br>**v.**<br><br>**CRUNCH SAN DIEGO, LLC,**<br><br>**Defendant.** | Case No.: 3:14-cv-00348-BAS-BLM<br><br>**MEMORANDUM OF POINTS AND AUTHORITES IN SUPPORT OF PLAINTIFF'S MOTION FOR RECONSIDERATION OF ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>**Date**: January 5, 2015<br><br>**NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT**<br><br>**Judge**:  Hon. Cynthia Bashant |

Kazerouni Law Group, APC
Costa Mesa, California

# TABLE OF CONTENTS

TABLE OF AUTHORITIES................................................................................... iii

I.      INTRODUCTION ................................................................................ 1

II.     LEGAL STANDARD ON MOTION FOR RECONSIDERATION ........ 2

III.    THE COURT COMMITTED REVERSIBLE LEGAL ERROR IN
        DECLINING TO FOLLOW THE FCC'S RULINGS CONCERNING
        THE EXPANDED DEFINITION OF AN AUTOMATIC
        TELEPHONE DIALING SYSTEM, WHICH DEFINITION IS
        CONTROLLING PURSUANT TO THE HOBBS ACT ......................... 3

        A.    The Hobbs Act Precludes This Court From Invalidating A Final
              Order of The Federal Communications Commission Regarding
              The Telephone Consumer Protection Act ....................................... 4

              1.    The Hobbs Act .......................................................... 4

              2.    The Court did not consider the implications of The Hobbs
                    Act, which applies to this case ................................... 5

                    i.    The district courts in Mais and Leckler incorrectly
                          refused to follow a final order of the FCC; the Mais
                          court was overturned and the Leckler Court later
                          reversed itself ................................................ 6

                    ii.   Even if the FCC lacked authority to interpret §
                          227(a)(1), this Court was not permitted to refuse to
                          follow the FCC's 2003 and 2008 rulings ................. 6

        B.    The Court Should Have Followed The FCC's Expanded
              Definition of An Automatic Telephone Dialing System In The
              FCC's 2003 and 2008 Rulings In Finding The
              Textmunication Platform Is An Automatic Telephone
              Dialing System ....................................................................... 9

              1.    The Courts almost unanimously follow the FCC's
                    expanded definition of an ATDS, including the Ninth
                    Circuit Court of Appeals ........................................... 9

    2.    **_Meyer_ is controlling authority that should have been followed as approving the FCC's expanded definition of an ATDS**................................................................10

    3.    **The Court was without jurisdiction to find the FCC's 2012 ruling to be mere commentary**.................................13

    4.    **The FCC's expanded definition of an ATDS does not require the use of a number generator**...................................13

    5.    **The FCC's language regarding lack of human intervention refers to the dialing aspect, not the storage or number generating aspect of the dialer**................................14

    6.    **If the meaning of an ATDS is unambiguous, then the Court was not permitted to resort to perceived Congressional intent to interpret § 227(a)(1)**.......................15

    7.    **The TCPA should be interpreted to protect consumers**......15

C.    **Alternatively, The Court Should Find A Material Issue Of Fact Is In Dispute Regarding Whether Defendant Used An ATDS, In Light Of Plaintiff's Expert Testimony That Was Not Considered By The Court**.................................................................16

**IV.   CONCLUSION** ...........................................................................6

**Kazerouni Law Group, APC**
Costa Mesa, California

# TABLE OF AUTHORITIES

**Cases**

*Addison Automatics, Inc. v. RTC Group*,
  2013 U.S. Dist. LEXIS 99448 (N.D. Ill. July 16, 2013). ......................................5

*American Ironworks & Erectors, Inc. v. North American Construction Corp.*,
  248 F.3d 892 (9th Cir. 2001)..........................................................................2

*Baird v. Sabre Inc.*,
  995 F. Supp. 2d 1100 (C.D. Cal. 2014)........................................................6, 7

*BedRoc Ltd., LLC v. United States*,
  541 U.S. 176 (U.S. 2004) ...............................................................................15

*CE Design, Ltd. v. Prism Business Media, Inc.*,
  606 F.3d 443 (7th Cir. 2010)........................................................... Passim

*Cooper v. Levine*,
  2007 U.S. Dist. LEXIS 76758 (S.D. Cal. Oct. 16, 2007)...................................3

*Daniel v. DFS Servs., LLC*,
  2011 U.S. Dist. LEXIS 41859 (D. Ariz. Apr. 15, 2011) ..................................3

*Gager v. Dell Fin. Servs., LLC*,
  727 F.3d 265 (3d Cir. Pa. 2013) ...................................................... 16

*Griffith v. Consumer Portfolio Serv.*,
  838 F. Supp. 2d 723 (N.D. Ill. 2011)............................................................14

*GTE S., Inc. v. Morrison*,
  199 F.3d 733 (4th Cir. 1999)..........................................................................9

*Hernandez v. Collection Bureau of Am., Ltd.*,
  2014 U.S. Dist. LEXIS 140661 (C.D. Cal. Apr. 16, 2014)............................7, 12

*Lardner v. Diversified Consultants, Inc.*,
  2014 U.S. Dist. LEXIS 64205 (S.D. Fla. Apr. 30, 2014)...................................9

*Leckler v. Cashcall, Inc.*,
  2008 U.S. Dist. LEXIS 97439 (N.D. Cal. Nov. 21, 2008) ...............................6

Kazerouni Law Group, APC
Costa Mesa, California

**Kazerouni Law Group, APC**
Costa Mesa, California

*Legg v. Voice Media Group, Inc.*,
    2014 U.S. Dist. LEXIS 67623 (S.D. Fla. May 16, 2014) ................................ 10

*Levy v. Receivables Performance Mgmt., LLC*,
    972 F. Supp. 2d 409 (E.D.N.Y. 2013) ................................................................ 5

*Leyse v. Clear Channel Broad., Inc.*,
    545 Fed. Appx. 444 (6th Cir. Ohio 2013) .......................................................... 4

*Mais v. Gulf Coast Collection Bureau*, Inc.,
    944 F. Supp. 2d 1226 (S.D. Fla. 2013) .............................................................. 6

*Mais v. Gulf Coast Collection Bureau, Inc.*,
    2014 U.S. App. LEXIS 18554 (11th Cir. Fla. Sept. 29, 2014) ........................... 6

*Marketquest Group, Inc. v. Bic Corp.*,
    2014 U.S. Dist. LEXIS 101942 (S.D. Cal. July 25, 2014) ............................. 2, 3

*Marks v. Crunch San Diego, LLC*,
    2014 U.S. Dist. LEXIS 152923 (S.D. Cal. Oct. 23, 2014) ....................... Passim

*Meyer v. Portfolio Recovery Assocs., LLC*,
    707 F.3d 1036 (9th Cir. 2012) ...................................................... Passim

*Moriarity v. Nationstar Mortgage, LLC*,
    2014 U.S. Dist. LEXIS 26169 (E.D. Cal. Feb. 27, 2014) ............................... 5, 7

*Murphy v. DCI Biologicals Orlando, LLC*,
    2013 U.S. Dist. LEXIS 181732 (M.D. Fla. Dec. 31, 2013) ............................. 10

*Olney v. Job.Com, Inc.*,
    2014 U.S. Dist. LEXIS 60843 (E.D. Cal. May 1, 2014) ..................................... 7

*Osterneck v. Ernst & Whinney*,
    489 U.S. 169 (1989) ........................................................................................... 3

*Pacific Bell v. Pac West Telecomm*,
    325 F.3d 1114 (9th Cir. 2003) ............................................................................ 7

*Satterfield v. Simon & Schuster, Inc.*,
    569 F.3d 946 (9th Cir. Cal. 2009) ................................................ 7, 12, 15, 18

*Sherman v. Yahoo! Inc.*,
   2014 U.S. Dist. LEXIS 13286 (S.D. Cal. Feb. 3, 2014).................................9, 18

*Smith v. Clark County School Dist.*,
   727 F.3d 950 (9th Cir. 2013) .......................................................................3

*Spine & Sports Chiropractic, Inc. v. Zirmed, Inc.*,
   2014 U.S. Dist. LEXIS 88562 (W.D. Ky. June 30, 2014) ................................10

*Sterk v. Path, Inc.*,
   2014 U.S. Dist. LEXIS 73507, 2014 WL 2443785 (N.D. Ill. May 30, 2014) ...10

*United States v. Any & All Radio Station Transmission Equip.*,
   207 F.3d 458 (8th Cir. Minn. 2000) .................................................................8

*US West Communs., Inc. v. Hamilton*,
   224 F.3d 1049 (9th Cir. Or. 2000)....................................................................4

*US West Communs., Inc. v. MFS Intelenet, Inc.*,
   193 F.3d 1112 (9th Cir. Wash. 1999)............................................................4, 9

*Warnick v. Dish Network LLC*,
   2014 U.S. Dist. LEXIS 138381 (D. Colo. Sept. 30, 2014) ................................9

*Wilson v. A.H. Belo Corp.*,
   87 F.3d 393 (9th Cir. Cal. 1996) .....................................................................4

*Zimmerman v. City of Oakland*,
   255 F.3d 734 (9th Cir. 2001).........................................................................3

**Statutes**

28 U.S.C. § 2342 ....................................................................................4, 5, 6, 7

28 U.S.C. § 2344 .........................................................................................4

47 U.S.C. § 227(a)(1) ..........................................................................passim

47 U.S.C. § 227(b)(1).....................................................................................3

47 U.S.C. § 402 ..........................................................................................10

47 U.S.C. § 402(a).........................................................................................4

47 U.S.C. § 405(a).........................................................................................4

Kazerouni Law Group, APC
Costa Mesa, California

**Rules**

Fed. R. Civ. P. 59(e) ...................................................................................2, 3

Fed. R. Civ. P. 60 ..........................................................................................2

**Other**

*In the Matter of Rules and Regulations Implementing the Telephone Consumer*
    *Protection Act of 1991,*
    18 F.C.C.R. 14014
    (2003) ............................................................................................passim

*In The Matter of Rules and Regulations Implementing the Telephone Consumer*
    *Protection Act of 1991,*
    73 Fed. Reg. 6041
    (Feb. 1, 2008) ...............................................................................passim

*In Re Matter of Rules and Regulations Implementing The Telephone Consumer*
    *Protection Act of 1991,*
    27 F.C.C.R. 15391
    (2012) ............................................................................................1, 13

**Kazerouni Law Group, APC**
Costa Mesa, California

## I.   INTRODUCTION

On October 24, 2014, the Court entered judgment for defendant Crunch San Diego, LLC ("Defendant") on its Motion for Summary Judgment on the single issue of whether the equipment used by Defendant constitutes an "automatic telephone dialing system" ("ATDS") under 47 U.S.C. § 227(a)(1) of the Telephone Consumer Protection Act ("TCPA").[1] As explained throughout the present motion, the Court erred in granting Defendant's Motion for Summary Judgment (the "MSJ") for two reasons, and should reverse the grant of summary judgment and rule in favor of Plaintiff, Jordan Marks ("Plaintiff"), in finding Defendant used an ATDS.

First, with respect, Plaintiff contends that this Court was without jurisdiction to invalidate (or determine the level of deference that should be afforded to) any final order from the Federal Communications Commission ("FCC") regarding the TCPA, including the FCC's rulings in 2003, 2008 and 2012, as only a circuit court of appeals – in this case the Ninth Circuit Court of Appeals – has such authority under the Administrative Orders Review Act, commonly known as The Hobbs Act.  By finding the FCC had no authority to issue regulations regarding § 227(a)(1) of the TCPA, this Court violated The Hobbs Act and thus committed reversal legal error.

Second, this Court should have followed the FCC's 2003 and 2008 rulings in finding that the Textmunication platform used by Defendant is an ATDS under the TCPA. While the FCC's 2003 and 2008 rulings address predictive dialers, the expanded definition of an ATDS encompasses the Textmunication platform here, as it has the capacity to store cellular telephone numbers in a database and send

---

[1] The Court denied the Defendant's motion to exclude the testimony of Jeffrey A. Hansen as moot, finding there was no material fact in dispute for purposes of the motion for summary judgment. *Marks v. Crunch San Diego, LLC*, 2014 U.S. Dist. LEXIS 152923, *12 (S.D. Cal. Oct. 23, 2014).

Kazerouni Law Group, APC
Costa Mesa, California

text messages to those numbers automatically and without human intervention, pursuant to the FCC's expanded definition of an ATDS. The FCC's expanded definition has not been invalidated by the Ninth Circuit Court of Appeals pursuant to The Hobbs Act. Thus, failure to apply the FCC's rulings to find that the Textmuncation platform is an ATDS was reversible legal error.

Alternatively, the Court should find there is a material issue in dispute regarding whether Defendant used an ATDS because the Court did not address Plaintiff's argument that, according to expert testimony, a number generator is used to produce telephone numbers rather than store telephone numbers, which means that a number generator is not required to find an ATDS was used by Defendant under the express language of the TCPA.

Therefore, Plaintiff respectfully requests this Court reconsider its grant of summary judgment in favor of Defendant, and rule in favor of Plaintiff in finding that the Textmunication system is an ATDS. Alternatively, the Court should, at the very least, find there is a material issue in dispute regarding whether Defendant used an ATDS, meaning that the case should proceed to trial.

In an abundance of caution, and to preserve Plaintiff's right to a de novo review of the order granting Defendant's MSJ, Plaintiff has currently filed a notice of appeal (Dkt. No. 59).

## II.   LEGAL STANDARD ON MOTION FOR RECONSIDERATION

"A motion for reconsideration may be brought under FRCP 59(e) or 60(b). A motion is treated as a motion to alter or amend judgment under Rule 59(e) if it is filed within twenty-eight days of entry of judgment; otherwise, it is treated as a Rule 60(b) motion for relief from a judgment or order." *Marketquest Group, Inc. v. Bic Corp.*, 2014 U.S. Dist. LEXIS 101942, *11 (S.D. Cal. July 25, 2014) (citing *American Ironworks & Erectors, Inc. v. North American Construction Corp.*, 248 F.3d 892, 898 (9th Cir. 2001)).

"The Court may grant a motion to alter or amend under Rule 59(e) when:

Kazerouni Law Group, APC
Costa Mesa, California

(1) the district court is presented with newly discovered evidence, (2) the district court committed clear error or made an initial decision that was manifestly unjust, or (3) there is an intervening change in controlling law." *Marketquest Group, Inc.*, 2014 U.S. Dist. LEXIS 101942 at *12 (citing *Duarte v. Bardales*, 526 F.3d 563, 567 (9th Cir. 2008) (quoting *Zimmerman v. City of Oakland*, 255 F.3d 734, 740 (9th Cir. 2001)).[2]

"Motions for reconsideration filed pursuant to a Court's Local Rules may be construed as motions to alter or amend judgment under Federal Rule of Civil Procedure 59(e)." *Cooper v. Levine*, 2007 U.S. Dist. LEXIS 76758, *4 (S.D. Cal. Oct. 16, 2007) (citing *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 109 S. Ct. 987, 103 L. Ed. 2d 146 (1989)).

"It is common for both trial and appellate courts to reconsider and change positions when they conclude that they made a mistake. This is routine in judging, and there is nothing odd or improper about it. A trial court may reconsider and reach a conclusion contrary to an earlier decision, and a paradigmatic example of when this should be done is when the court made its prior decision without considering the legal standards in a controlling opinion …" *Smith v. Clark County School Dist.*, 727 F.3d 950, 955 (9th Cir. 2013).

## III. THE COURT COMMITTED REVERSIBLE LEGAL ERROR IN DECLINING TO FOLLOW THE FCC'S RULINGS CONCERNING THE EXPANDED DEFINITION OF AN AUTOMATIC TELEPHONE DIALING SYSTEM, WHICH DEFINITION IS CONTROLLING PURSUANT TO THE HOBBS ACT

The Hobbs Act precludes this Court from invalidating any final order from the FCC regarding the TCPA. Applying the FCC's expanded definition of an ATDS as articulated in the 2003 and 2008 rulings as controlling authority

---

[2] "Plaintiff's case was terminated by an order granting summary judgment, and therefore, the Court construes Plaintiff's request to 'alter or amend' the Court's Order as a motion for reconsideration under Rule 59(e)…" *Daniel v. DFS Servs., LLC*, 2011 U.S. Dist. LEXIS 41859, *2, n.1 (D. Ariz. Apr. 15, 2011).

*Kazerouni Law Group, APC*
*Costa Mesa, California*

pursuant to The Hobbs Act, the Textmunication system falls squarely within the meaning of an ATDS.  Therefore, the Court committed reversible legal error in granting Defendant's MSJ.

**A.     The Hobbs Act Precludes This Court From Invalidating A Final Order of The Federal Communications Commission Regarding The Telephone Consumer Protection Act**

The Court erred in invalidating, or choosing not to give any degree of deference to, the FCC's 2003 and 2008 rulings, as such authority is given only to the circuit court of appeals pursuant to The Hobbs Act.

**1.     The Hobbs Act**

The, Administrative Orders Review Act, more commonly known as The Hobbs Act, "reserves to the courts of appeals the power 'to enjoin, set aside, suspend (in whole or in part), or to determine the validity of' all final FCC orders, *see* 28 U.S.C. § 2342(1); 47 U.S.C. § 402(a)." *CE Design, Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443, 446 (7th Cir. Ill. 2010).[3]  It requires "that before seeking relief from an appellate court, a party aggrieved by the FCC's final order must petition the FCC for reconsideration, *see* 47 U.S.C. § 405(a)." *Id.* at 446. Significantly, the Hobbs Act requires that any direct appeal to the circuit court of appeals must be brought within sixty (60) days of the time the final order from the FCC is released to the public. 28 U.S. Code § 2344.

The Hobbs Act thus "vest[s] the courts of appeals with exclusive jurisdiction to review the validity of FCC rulings." *Wilson v. A.H. Belo Corp.*, 87 F.3d 393, 396-97 (9th Cir. Cal. 1996) (emphasis added). "Aggrieved parties may invoke this exclusive jurisdiction 'only by filing a petition for review of the FCC's final order in a court of appeals naming the United States as a party.'" *US West*

---

[3] "The Hobbs Act and the Federal Communications Act work in tandem to confine the jurisdiction of federal courts over efforts to invalidate certain actions by the FCC." *Leyse v. Clear Channel Broad., Inc.*, 545 Fed. Appx. 444, 447 (6th Cir. Ohio 2013).

**Kazerouni Law Group, APC**
Costa Mesa, California

*Communs., Inc. v. Hamilton*, 224 F.3d 1049, 1054 (9th Cir. Or. 2000) (quoting *MFS Intelenet*, 193 F.3d at 1120; *see also* 28 U.S.C. §§ 2342, 2344). This means that the FCC's rulings at issue here can no longer be challenged, even by the Ninth Circuit Court of Appeals, as the 60-day time period has passed to bring a direct appeal of the FCC rulings.

### 2.   The Court did not consider the implications of The Hobbs Act, which applies to this case

At the MSJ hearing held on October 21, 2014, Plaintiff argued that:

> the district court is bound by the Hobbs Act and the FCC opinions unless that particular issue in a timely manner under the Hobbs Act was appealed and overruled by the specific circuit court, and that did not happen in the Ninth Circuit either for the 2003 opinions or the 2008 opinions.

Exhibit A (MSJ Hearing Transcript), 14:23-15:2.[4] Plaintiff had explained in opposition to the MSJ that "[t]he '[o]rders or rules promulgated by the FCC are binding on this Court pursuant to the Administrative Orders Review Act ("Hobbs Act"), 28 U.S.C. § 2342(1).' *Addison Automatics, Inc. v. RTC Group*, 2013 U.S. Dist. LEXIS 99448, *10 (N.D. Ill. July 16, 2013)." Dkt. No. 24, 20:11-24; *see also id*. at n. 5 (Pl.'s Opposition to MSJ).  However, absent from the Court's MSJ Order is any discussion of The Hobbs Act and its applicability to this case.

"Courts of this circuit have recognized that the FCC's pronouncement [regarding prior express consent in the 2008 ruling] constitutes rulemaking within the meaning of the TCPA and immune from challenge in federal district court pursuant to the Hobbs Act…" *Moriarity v. Nationstar Mortgage, LLC*, 2014 U.S. Dist. LEXIS 26169, *10 (E.D. Cal. Feb. 27, 2014).  Indeed, "the overwhelming majority of district courts that have considered this issue have found that the FCC's rulings, including the 2008 TCPA Order, are binding on them (and not subject to review except by the federal courts of appeals)…" *Levy v. Receivables*

---

[4] *See* Declaration of Abbas Kazerounian, ¶ 5, filed concurrently.

Kazerouni Law Group, APC
Costa Mesa, California

*Performance Mgmt., LLC*, 972 F. Supp. 2d 409, 419 (E.D.N.Y. 2013).

> **i.** ***The district courts in Mais and Leckler incorrectly refused to follow a final order of the FCC; the Mais court was overturned and the Leckler Court later reversed itself***

In *Mais v. Gulf Coast Collection Bureau, Inc.*, the district court found that The Hobbs Act did not preclude the court from refusing to follow the FCC's 2008 ruling. *See Mais v. Gulf Coast Collection Bureau*, Inc., 944 F. Supp. 2d 1226, 1237 (S.D. Fla. 2013). On appeal, the Eleventh Court ruled that "[b]y refusing to enforce the FCC's interpretation, the district court exceeded its power." *Mais v. Gulf Coast Collection Bureau, Inc.*, 2014 U.S. App. LEXIS 18554, *20 (11th Cir. Fla. Sept. 29, 2014). Also, in *Baird v. Sabre Inc.*, 995 F. Supp. 2d 1100, 1104 (C.D. Cal. 2014), the court noted that in "*Leckler II …*, Judge Illston vacated her prior opinion because she concluded she lacked authority to question the validity of the FCC's rulemaking."). By finding the FCC had no authority to expand or interpret the definition of an ATDS under § 227(a)(1) of the TCPA, this Court, similar to the district courts in *Mais* and *Leckler*, exceeded its authority.

The Eleventh Circuit in *Mais* explained:

> As we see it, the district court lacked the power to consider in any way the validity of the 2008 FCC Ruling and also erred in concluding that the FCC's interpretation did not control the disposition of the case. In the Hobbs Act, 28 U.S.C. § 2342, Congress unambiguously deprived the federal district courts of jurisdiction to invalidate FCC orders by giving exclusive power of review to the courts of appeals.

*Mais*, 2014 U.S. App. LEXIS 18554 at *2.

> **ii.** ***Even if the FCC lacked authority to interpret § 227(a)(1), this Court was not permitted to refuse to follow the FCC's 2003 and 2008 rulings***

Assuming, *arguendo*, that the FCC was without authority to interpret § 227(a)(1) of the TCPA and essentially expand the definition of an ATDS to

include emerging technologies,[5] as found by this Court (*Marks*, 2014 U.S. Dist. LEXIS 152923 at *11-12),[6] this Court was still required to treat the FCC's 2003 and 2008 rulings as controlling law under The Hobbs Act because they have not been invalidated by the Ninth Circuit Court of Appeals. The FCC's interpretations of TCPA are controlling unless invalidated by a court of appeals. *See* 28 U.S.C. § 2342 *et seq.*; *Pacific Bell v. Pac West Telecomm,* 325 F.3d 1114, 1125 (9th Cir. 2003); *see also Olney v. Job.Com, Inc.*, 2014 U.S. Dist. LEXIS 60843, *14 (E.D. Cal. May 1, 2014) (finding FCC's 1992 TCPA ruling was controlling authority pursuant to The Hobbs Act); *Moriarity v. Nationstar Mortgage, LLC*, 2014 U.S. Dist. LEXIS 26169, *10 (E.D. Cal. Feb. 27, 2014) (discussing FCC's 2008 ruling being immune from challenge under The Hobbs Act); *Hernandez v. Collection Bureau of Am., Ltd.*, 2014 U.S. Dist. LEXIS 140661, *8 (C.D. Cal. Apr. 16, 2014) (noting The Hobbs Act and the Communications Act of 1934 together "divest this Court of any authority to rule on the validity or invalidity of the FCC's 2003 Order.").[7]

---

[5] "The APA explicitly provides that "the agency, with like effect as in the case of other orders, and in its sound discretion, may issue a declaratory order to terminate a controversy or remove uncertainty.' 5 U.S.C. § 554(e)." *Wilson*, 87 F.3d at 397. This is what the FCC did when issuing the 2003 and 2008 rulings addressing predictive dialing technology. *See* 18 FCC Rcd. 14014, 14092 ("It is clear from the statutory language and the legislative history that Congress anticipated that the FCC, under its TCPA rulemaking authority, might need to consider changes in technologies.") (emphasis added).

[6] "The Court finds that the FCC has no authority to modify or definitively interpret any language in § 227(a) of the TCPA." *Marks*, 2014 U.S. Dist. LEXIS 152923, at *11-12.

[7] *See also Baird v. Sabre Inc.*, 995 F. Supp. 2d 1100, 1104 (C.D. Cal. 2014) ("even if the Ninth Circuit's reference in *Satterfield* to the dictionary definition of 'express consent' was intended to express disagreement with the FCC's interpretation, the Ninth Circuit had no power to reject the FCC rule in the course of an appeal from a judgment denying a TCPA claim."). Thus, according to the *Baird* Court, not even the Ninth Circuit Court of Appeals could have invalidated the FCC's ruling if it has wanted to because it was not timely challenged on direct

Kazerouni Law Group, APC
Costa Mesa, California

Defendant may argue that this Court did not actually invalidate the FCC's 2003 and 2008 rulings, but that is essentially what the Court did when finding the FCC was without authority to interpret § 227(a)(1); and, "deeming agency action valid or ineffective is precisely the sort of review that the Hobbs Act delegates to the courts of appeals in cases challenging final FCC orders." *CE Design, Ltd*., 606 F.3d at 448; *see also Wilson*, 87 F.3d at 399-400 (noting that asking a district court to agree or disagree with an FCC ruling invokes the Hobbs Act's jurisdictional bar) (emphasis added). "Whichever way it is done, to ask the district court to decide whether the regulations are valid violates" the Hobbs Act. *United States v. Any & All Radio Station Transmission Equip*., 207 F.3d 458, 463 (8th Cir. Minn. 2000). This Court therefore exceeded its jurisdiction when finding that the FCC was without authority to issue regulations regarding § 227(a)(1).

Notably, "a litigant can't avoid the Hobbs Act's jurisdictional bar simply by accusing an agency of acting outside its authority." *CE Design, Ltd*., 606 F.3d at 448. This Court stated in the MSJ Order, "the Court is able to address the argument and has addressed its merits" (*Marks*, 2014 U.S. Dist. LEXIS 152923, *12). Again, however, federal district courts do not have jurisdiction to decide whether the FCC acted outside of its authority, pursuant to The Hobbs Act.  *See Leckler v. Cashcall, Inc*., 2008 U.S. Dist. LEXIS 97439, *6-7 (N.D. Cal. Nov. 21, 2008) ("The Court agrees with both parties that it did not have jurisdiction to review the FCC's declaratory ruling.").

Therefore, the Court committed reversible legal error, as this Court was without jurisdiction to treat[8] the FCC's rulings as anything but controlling

---

appeal under The Hobbs Act.

[8] *Chevron* analysis is not permitted by the federal district courts when it concerns an FCC final order because The Hobbs Act restricts such analysis to the court courts of appeals. *See CE Design, Ltd*., 606 F.3d at 450 (finding no support for the contention that a district court can engage in the *Chevron* analysis without questioning its jurisdiction to determine the validity of the regulation in question).

Kazerouni Law Group, APC
Costa Mesa, California

authority under The Hobbs Act.

**B.    The Court Should Have Followed The FCC's Expanded Definition of An Automatic Telephone Dialing System In The FCC's 2003 and 2008 Rulings In Finding The Textmunication Platform Is An Automatic Telephone Dialing System**

Although the Hobbs Act prevents the district courts from considering the validity of final FCC orders, the district courts retain jurisdiction to determine whether the parties' actions violate FCC rules. *See, e.g., U.S. West Commcn's, Inc.*, 304 F.3d at 958 & n.2; *GTE S., Inc. v. Morrison*, 199 F.3d 733, 742-43, 746-47 (4th Cir. 1999).

**1.    The Courts almost unanimously follow the FCC's expanded definition of an ATDS, including the Ninth Circuit Court of Appeals**

In the Court's MSJ Order, the Court explained, in a footnote, the following: (i) "Even if the interpretation was binding or convincing, the FCC's interpretation dealt with predictive dialers and not third-party text messaging platforms like the one at issue here;" and (ii) "The portions of the FCC's decisions in 2008 and 2012 that Plaintiff cites to both refer back to the 2003 FCC sections regarding predictive dialers." *Marks*, 2014 U.S. Dist. LEXIS 152923, n. 5. However, this Court incorrectly dismissed the FCC's 2003, 2008 and 2012 rulings as inapplicable to the facts of the present case.

Like other courts, including the Ninth Circuit Court of Appeals in *Meyer*, this Court should have followed the FCC's expanded definition of an ATDS in considering Defendant's MSJ. "Indeed, this expanded definition of an ATDS per the FCC rulings has been adopted by almost every court that has looked at the issue." *Warnick v. Dish Network LLC*, 2014 U.S. Dist. LEXIS 138381, *38 (D. Colo. Sept. 30, 2014) (citing *See, e.g., Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012); *Sherman v. Yahoo! Inc*., 997 F. Supp. 2d 1129, 1135 (S.D. Cal. 2014); *Holcombe*, 2014 U.S. Dist. LEXIS 122054, 2014

WL 4252277, at *2-3; *Sterk v. Path, Inc.*, No. 13 C 2330, 2014 U.S. Dist. LEXIS 73507, 2014 WL 2443785, at *3-4 (N.D. Ill. May 30, 2014)) (emphasis added).[9] *See also Spine & Sports Chiropractic, Inc.*, 2014 U.S. Dist. LEXIS 88562, 2014 WL 2946421, at *19 (explaining that it disagreed with the defendant's argument that the FCC "was without authority to expand TCPA liability"). Thus, the Defendant was incorrect to state that "you only apply those FCC rulings if they're … controlling" (Exhibit A, 19:7-9), implying that the FCC's rulings at issue here are not controlling, as only the circuit courts of appeals can make that determination under The Hobbs Act.

### 2. *Meyer* is controlling authority that should have been followed as approving the FCC's expanded definition of an ATDS

It is of critical significance that the Ninth Circuit Court of Appeals followed the FCC's 2003 ruling in the *Meyer* decision in finding that "[t]he FCC further defined 'automatic telephone dialing system' to include predictive dialers," as a predictive dialer "has the capacity <u>to store</u> or produce numbers <u>and dial those numbers</u> at random, in sequential order, or <u>from a database of numbers</u>…" *Meyer v. Portfolio Recovery Assocs., LLC*, 696 F.3d 943, 949 (9th Cir. Cal. 2012) (quoting *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14091-93 (July 3, 2003)) (emphasis added). *See also* Exhibit A, 13:17-14:7. *Meyer* is controlling authority, regardless of whether the FCC had authority to issue regulations regarding § 227(a)(1).

While the Textmunication system may not be a predictive dialer, it has the

---

[9] "Regardless of whether the Hobbs Act precludes review of the 2003 FCC Order or <u>Chevron</u> deference applies, the Court joins those other district courts which have found the 2003 FCC Order reasonable and persuasive in defining an ATDS." *Legg v. Voice Media Group, Inc.*, 2014 U.S. Dist. LEXIS 67623, *12 (S.D. Fla. May 16, 2014); *see also Murphy v. DCI Biologicals Orlando, LLC*, No. 12-1459, 2013 U.S. Dist. LEXIS 181732 at *23-31 (M.D. Fla. Dec. 31, 2013) (finding that Hobbs Act, 47 U.S.C. § 402, deprives district courts of jurisdiction to review merit of FCC regulations relating to TCPA).

Kazerouni Law Group, APC
Costa Mesa, California

exact capacity explained by the FCC that would make it a predictive dialer were the extra timing component[10] added to the platform. Plaintiff argued at the MSJ hearing that "[t]he 2003 opinion further went on, and it said the only thing that differentiates a normal dialer and a predictive dialer is the timing function. These machines are not conceptually different from dialing machines without the predictive computer program attached…" Exhibit A, 15:23-16:2. And, as this Court recognized, predictive dialers "are not conceptually different from dialing machines without the predictive computer program attached." *Marks*, 2014 U.S. Dist. LEXIS 152923, n. 7 (citing 18 F.C.C.R. 14014, 14092 (2003) (emphasis added).

Stated differently, a predictive dialer is an ATDS because it can store cellular telephone numbers as a list or in a database and dial those numbers without human intervention, such as other dialers that do not employ the predictive dialing function; the FCC explained this in its 2003 Ruling. "[A] predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C.R. 14014, 14091-93 (2003) (emphasis added).

Plaintiff argued that a predictive dialer is an ATDS under the TCPA, but that equipment need not be a predictive dialer (i.e., have the predictive dialing

---

[10] As this Court pointed out, "[t]he principal feature of predictive dialing software is a timing function, not number storage or generation." *Marks*, 2014 U.S. Dist. LEXIS 152923, n. 7 (citing 18 F.C.C.R. 14014, 14092 (2003) (emphasis added)). This means that the FCC was not concerned with the "timing function," but rather the "number storage or generation" ability that makes it an ATDS; the timing function was not a part of the FCC's expanded definition of an ATDS in either the 2003 or 2008 ruling.

Kazerouni Law Group, APC
Costa Mesa, California

software feature) in order to be an ATDS. *See* Dkt. No. 24, 22:23-23:2; *see also id.* at n. 4.   Thus, even though the Textmunication system here may not employ use of the predictive dialing technology commonly associated with many commercial dialers, the fact that it stored cell phone numbers in a database and can send text messages to those numbers without human intervention clearly makes the platform an ATDS under the FCC's expanded definition. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 73 Fed. Reg. at 6042*; In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 18 FCC Rcd. at 14092.

Further, the *Meyer* decision[11] did not turn on whether the system could be modified to include a random or sequential number generator (*see Marks*, 2014 U.S. Dist. LEXIS 152923, *12).   The system in *Meyer* was found to be an ATDS because it has "the *capacity* to dial numbers without human intervention" (which was undisputed in that case), as recognized by this Court, *see id*. at *11. The *Meyer* Court followed the FCC's ruling on this issue, as acknowledged by this Court, *id.*, which is why Defendant's MSJ should have been denied.[12]

///

///

---

[11] When addressing the *Meyer* decision, this Court stated, "challenges to the FCC's authority to interpret the statute were waived because they were not raised at the district court level" (*Marks*, 2014 U.S. Dist. LEXIS 152923, *11); however, under The Hobbs Act, the *Meyer* Court could not have invalidated the FCC's 2003 ruling even if the argument had been preserved.

[12] Although not controlling, Plaintiff cited to the *Hernandez* decision which essentially found that, in Plaintiff's words, "if you have a list of numbers and you have some kind of machine that automatically dials them, that's an ATDS" (Exhibit A, 17:15-17). *See also Sherman v. Yahoo! Inc*., 997 F. Supp. 2d 1129, 1140 (S.D. Cal. 2014) ("This Court's construction of ATDS is premised on the statutory text of the TCPA as interpreted by the <u>Satterfield</u> court. (<u>See</u> Dkt. No. 30 at 11-12) (citing <u>Satterfield</u> for the proposition that the focus of the ATDS inquiry is on whether the equipment has the *capacity to store and dial phone numbers*)." (emphasis added).

Kazerouni Law Group, APC
Costa Mesa, California

### 3. The Court was without jurisdiction to find the FCC's 2012 ruling to be mere commentary

Language from the FCC's 2012 ruling was not mere "commentary." *See Marks*, 2014 U.S. Dist. LEXIS 152923, * 6. Apart from this Court's lack of jurisdiction to deem such language mere "commentary" as opposed to a final order, pursuant to The Hobbs Act, the FCC in its 2012 ruling was referring to its final orders in 2003 and 2008, which rulings are applicable to this case and support the conclusion that the Textmunication system is an ATDS.

### 4. The FCC's expanded definition of an ATDS does not require the use of a number generator

In the MSJ Order, the Court found that "because the Textmunication platform lacks a random or sequential number generator, it is not currently an ATDS," *Marks*, 2014 U.S. Dist. LEXIS 152923, *10. However, the FCC clearly ruled in 2003, and confirmed in 2008, that a number generator is not required, *see In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 73 Fed. Reg. at 6042*; In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 18 FCC Rcd. at 14092. This is especially the case because predictive dialers need not employ use of a number generator in order to function as a predictive dialer, *see* 18 FCC Rcd. at 14090 (recognizing commentary that "predictive dialers store pre-programmed numbers or receive numbers from a computer database and then dial those numbers in a manner that maximizes efficiencies for call centers.").

Thus, a number generator, whether random or sequential, is not needed to satisfy the FCC's expanded definition of an ATDS (as explained above). "The basic function of such equipment, however, has not changed--the *capacity* to dial numbers without human intervention." *Id*. at 14092 (emphasis added); *see id*. at 14098-92 ("The statutory definition contemplates autodialing equipment that either stores or produces numbers.").

Kazerouni Law Group, APC
Costa Mesa, California

Moreover, the court in *Griffith v. Consumer Portfolio Serv.*, 838 F. Supp. 2d 723, 726 (N.D. Ill. 2011) pointed out, importantly, that "[t]he petitioner requesting clarification [of the FCC's 2003 Ruling] argued that 'a predictive dialer meets the definition of autodialer only when it randomly or sequentially generates telephone numbers, not when it dials numbers from customer telephone lists.' *Id.* The FCC rejected this interpretation, citing the policy considerations that guided its 2003 ruling. *Id.* at 566-67.").

### 5. The FCC's language regarding lack of human intervention refers to the dialing aspect, not the storage or number generating aspect of the dialer

In applying the "lack of human intervention" language by the FCC, the Court here incorrectly applied that language to the "storage" aspect of the text messaging system when that language actually modifies the "dialing" aspect of the dialing system. *See Marks*, 2014 U.S. Dist. LEXIS 152923, *9 ("Numbers only <u>enter</u> the system through one of the three methods listed above, and all three methods require human curation and intervention.") (emphasis added).

The focus is on the ability to store telephone numbers in a database to be *called* without human intervention, not the ability to *store* numbers without human intervention, which would be impossible anyways because a person is needed to enter numbers into a database or create a list of numbers even for a predictive dialer (which the FCC found is an ATDS). *See* Exhibit A, 16:20-17:1 (human intervention is needed to input number into a database, "but the machine after that automatically does what congress was talking about"). "If it's calling without human intervention automatically to consumers, that's got to be an ATDS." Exhibit A, 18:4-5. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 73 Fed. Reg. at 6042; *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 18 FCC Rcd. at 14092.

**6.  If the meaning of an ATDS is unambiguous, then the Court was not permitted to resort to perceived Congressional intent to interpret § 227(a)(1)**

This Court stated in the MSJ Order that "[i]It seems unlikely that Congress intended to subject such a wide swath of the population to a law designed to combat unwanted and excessive telemarketing." *Marks*, 2014 U.S. Dist. LEXIS 152923 at \*8.  However, if this Court were correct that the *Satterfield* Court found the entire §227(a)(1) to be unambiguous – rather than merely the "capacity" issue being unambiguous – then this Court was not permitted to consider Congressional intent – even perceived Congressional intent – in making its ruling, as such is not permitted where the statutory text is unambiguous.[13] *See BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (U.S. 2004) ("Thus, our inquiry begins with the statutory text, and ends there as well if the text is unambiguous."). Were this not the case, the Ninth Circuit Court of Appeals in *Meyer* would not have followed the FCC's 2003 ruling addressing predictive dialers, as the statutory text of the TCPA says nothing about predictive dialers.[14]

**7.  The TCPA should be interpreted to protect consumers**

This Court expressed a concern that the expanded definition could be used to encompass "any phone featuring a built-in phonebook could have the present capacity to qualify as an ATDS." *Marks*, 2014 U.S. Dist. LEXIS 152923, n. 6. Such hypothetical situation, however, should not have been the basis for granting summary judgment in favor of Defendant.  Applying the FCC's rulings to the facts of the present case should have resulted in a finding that the Textmunication

---

[13] *See* Dkt. No 24, n. 14.

[14] Interestingly, Defendant conceded at oral argument that courts should look to the FCC's ruling on predictive dialers if a predictive dialer it at issue, which contradicts the Defendant's argument that the courts should not look to the FCC's rulings concerning the ATDS issue because that statutory language in the TCPA is unambiguous. *See* Exhibit A, 22:3-6.

Kazerouni Law Group, APC
Costa Mesa, California

platform is an ATDS, regardless of whether following such rulings may or may not result in any phone with a built-in phonebook being an ATDS.

"[I]t would be against public policy to exempt from the TCPA companies like Textmunication who use a web-based platform to '[s]end mass texts promoting an event' … rather than a traditional telephone dialer where the end result is the same, i.e. the company sends mass text messages automatically from a list or database of numbers." Dkt. No. 24, 21:20-22:3. "This is especially the case where is appears that such web-based platforms are becoming more prevalent and the TCPA is a remedial statute designed to protect consumers…" *Id*. at 21:3-8. *See Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271 (3d Cir. Pa. 2013) ("[b]ecause the TCPA is a remedial statute, it should be construed to benefit consumers."

Thus, this Court should have followed controlling authority from the FCC, and the Ninth Circuit Court of Appeals in the *Meyer* decision, in finding the Textmunication platform is an ATDS.

## C. Alternatively, The Court Should Find A Material Issue Of Fact Is In Dispute Regarding Whether Defendant Used An ATDS, In Light Of Plaintiff's Expert Testimony That Was Not Considered By The Court

The Court declined to consider Plaintiff's expert testimony from Jeffrey A. Hansen. *See Marks*, 2014 U.S. Dist. LEXIS 152923 at *5 ("The undisputed facts show that Defendant did not use an ATDS to send text messages."); *see also id*. at *12 ("Here, expert testimony opining on legal questions is irrelevant and therefore not a basis for this Court's ruling.").

The Parties' stipulated at the MSJ hearing that:

> the text communication platform stored numbers inputted by various human beings and then sent a group text message to the stored numbers; and, number two, the platform could only send messages to specific phone

Kazerouni Law Group, APC
Costa Mesa, California

numbers inputted by some authorized person. … The platform cannot send text messages to random numbers; the platform cannot send text messages generated from a random or sequential number generator; and it's not predictive dialing. So ultimately this particular motion for summary judgment turns on the purely legal question of the meaning of the statutory definition of an automatic telephone dialing device or whatever it's called, ATDS, as applied to these facts and what using a random or sequential number generator means and what that phrase is modifying, whether it's solely production or production and storage of numbers.

Exhibit A, 2:22-3:13. However, this stipulation did not mean that the issue of whether telephone numbers are stored using a number generator or not was no longer at issue in this case.

In support of the brief in opposition to Defendant's motion or summary judgment, Mr. Hansen explained that "[r]andom or sequential number generators are a method of generating numbers, but have nothing to do with computer storage, only the production." Dkt. No. 24, 14:6-8.  If Mr. Hansen is correct, then a number generator is not needed for the Textmunication platform to be an ATDS. "The storing function or ability is separate and apart from any ability to produce numbers using a telephone number generator." Dkt. 24, 14:4-6. Significantly, Defendant did not offer any rebuttal expert testimony to challenge Mr. Hansen's testimony on this point. This should be a jury question if the Court does not reconsider the order granting Defendant's motion for summary judgment and go as far as to actually find that the Textmunication is an ATDS.

Therefore, in the alternative, the Court should, at the very least, find a material issue of fact is in dispute regarding what is required for equipment to be an ATDS, as was found by the Ninth Circuit Court of Appeals in the *Satterfield*[15]

---

[15] *See Satterfield*, 569 F.3d at 951 ("Therefore, this limited record demonstrates that there is a genuine issue of material fact whether this telephone system has the requisite capacity to be considered an ATDS under the TCPA. Given the

and by this Court in *Sherman*.[16]

## IV.   CONCLUSION

In conclusion, Plaintiff respectfully requests the Court reconsider its decision to grant summary judgment in favor of Defendant, and rule in favor of Plaintiff in finding the Textmunication system is an ATDS. In the alternative, the Court should find a material issue of fact is in dispute regarding whether Defendant used an ATDS.

Date: November 20, 2014                    **KAZEROUNI LAW GROUP, APC**

                                           By:   _/s Abbas Kazerounian___
                                               Abbas Kazerounian
                                               *Attorneys for Plaintiff*

**HYDE & SWIGART**
Joshua B. Swigart, Esq. (SBN: 225557)
josh@westcoastlitigation.com
2221 Camino Del Rio South, Suite 101
San Diego, CA 92108-3551
Telephone: (619) 233-7770
Facsimile: (619) 297-1022
*Attorneys by Plaintiff*

**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
Todd M. Friedman, Esq. (SBN: 216752)
tfriedman@attorneysforconsumers.com
324 S. Beverly Dr., #725
Beverly Hills, CA 90212
Telephone: (877) 206-4741
Facsimile: (866) 633-0228
*Attorneys for Plaintiff*

---

conflicting testimony and this limited record, we hold that summary judgment on this issue was inappropriate.").

[16] *See Sherman v. Yahoo! Inc.*, 997 F. Supp. 2d 1129, 1143 (S.D. Cal. 2014) ("the Court finds no clear error in its previous conclusion that genuine issues of material fact exist as to whether Yahoo!'s equipment has the requisite 'capacity' to be considered an ATDS under the TCPA.").

Kazerouni Law Group, APC
Costa Mesa, California