EXHIBIT A

```
 1                    UNITED STATES DISTRICT COURT

 2               FOR THE SOUTHERN DISTRICT OF CALIFORNIA

 3                                    )
                                      )
 4     JORDAN MARKS, etc.,            )
                                      )   No. 14-CV-348-BAS
 5          Plaintiff,                )
                                      )   October 21, 2014
 6             v.                     )
                                      )   2:02 p.m.
 7     CRUNCH SAN DIEGO, LLC,         )   San Diego, California
                                      )
 8          Defendant.                )
                                      )
 9

10

11                 Transcript of Summary Judgment
              BEFORE THE HONORABLE CYNTHIA BASHANT
12               United States District Judge

       APPEARANCES:
13
       For the Plaintiff:      KAZEROUNI LAW GROUP, APC
14                                  By:  ABBAS KAZEROUNIAN, ESQ.
                                    245 Fischer Ave., Ste. D1
15                                  Costa Mesa, CA  92626
               - and -
16                             HYDE & SWIGART
                                    By:  JOSHUA SWIGART, ESQ.
17                                  2221 Camino Del Rio S, Ste. 101
                                    San Diego, CA 92108
18
       For the Defendant:      GREENBERG TRAURIG LLP
19                                  By:  IAN CHARLES BALLON, ESQ.
                                    2450 Colorado Ave., Ste. 400E
20                                  Santa Monica, CA  90404

21

22     Court Reporter:         Dana Peabody, RDR, CRR
                               District Court Clerk's Office
23                             333 West Broadway, Suite 420
                               San Diego, California, 92101
24                             DanaPeabodyCSR@gmail.com

25     Reported by Stenotype, Transcribed by Computer
```

```
 1                San Diego, California, October 21, 2014
 2                              *   *   *
 3              THE COURT:  Good afternoon.
 4              THE CLERK:  Calling matter number 2, 14-CV-0348, Marks
 5      versus Crunch San Diego, LLC on calendar for motion hearing.
 6              THE COURT:  Counsel, appearances for the record,
 7      please.
 8                  MR. KAZEROUNIAN:  Abbas Kazerounian for the plaintiff.
 9                  MR. SWIGART:  And Josh Swigart for the plaintiff as
10      well.
11                  MR. BALLON:  Ian Ballon for the defendant, and with me
12      is Lori Chang.
13              THE COURT:  Good afternoon.  Okay.  This is set for a
14      motion for summary judgment, and I reviewed the defendant's
15      motion for summary judgment with all the attachments and the
16      exhibits, the plaintiff's response with all the attachments and
17      the exhibits, and the defendant's reply with the attachments
18      and the exhibits, and it appears to me, and you can tell me if
19      I'm wrong, that there isn't really any question of fact in this
20      case, at least as far as the individual legal issue goes.
21                  Everyone agrees, first of all, and, again, correct me
22      if I'm wrong, that the text communication platform stored
23      numbers inputted by various human beings and then sent a group
24      text message to the stored numbers; and, number two, the
25      platform could only send messages to specific phone numbers
```

14-CV-348-BAS

3

```
 1    inputted by some authorized person.  It's not like they
 2    purchased some big telephone numbers from a third party; third,
 3    the platform does not generate any numbers at all.  The
 4    platform cannot send text messages to random numbers; the
 5    platform cannot send text messages generated from a random or
 6    sequential number generator; and it's not predictive dialing.
 7              So ultimately this particular motion for summary
 8    judgment turns on the purely legal question of the meaning of
 9    the statutory definition of an automatic telephone dialing
10    device or whatever it's called, ATDS, as applied to these facts
11    and what using a random or sequential number generator means
12    and what that phrase is modifying, whether it's solely
13    production or production and storage of numbers.
14              Does everyone agree that's at least the issue?
15    Plaintiff?
16              MR. KAZEROUNIAN:  That's accurate.
17              THE COURT:  Defendants?
18              MR. BALLON:  Yes, with one caveat.  I'm not sure what
19    the Court meant by "group text" because it would be possible to
20    use this system to send a text message to one person or to
21    multiple people, but otherwise we're in full agreement.  It's a
22    legal question.
23              THE COURT:  It could be used to send to one number
24    although there really wouldn't be any point to just have text
25    communication.  The whole point is to send out a big email to
```

1   everyone, right?

2             MR. BALLON:  No, I think --

3             THE COURT:  I used the term "email" just because I'm

4   technically not adept, but you know what I mean.

5             MR. BALLON:  No, I think it can be used just for one

6   or for small numbers or for a group email.

7             THE COURT:  So let me hear from the plaintiff.  Since

8   I think I know the issue, I'm sorry, let me hear from the

9   defendants first as to why you think this should be granted.

10            MR. BALLON:  Thank you, Your Honor.

11            The facts are not in dispute, and under *Satterfield* we

12  believe we are entitled to summary judgment.  The *Satterfield*

13  decision has two aspects that are relevant to this case.  The

14  first is the Court's finding that the definition of ATDS is

15  unambiguous and therefore under the Ninth Circuit, under the

16  *Satterfield* precedent, because the definition is unambiguous,

17  in the Ninth Circuit, courts are not supposed to look beyond

18  the plain terms of the statute; and under the plain terms of

19  the statute, it is undisputed that the system here does not

20  generate numbers randomly or sequentially.

21            THE COURT:  If it's true that the using of random or

22  sequential number generator modifies both storing and producing

23  numbers, what does it mean to store telephone numbers using a

24  random or sequential number generator?  What does that mean?

25  How do you store a number using a random sequential number

1          MR. KAZEROUNIAN:  Arguably so, Your Honor.  I'm not

2    saying it's within the realm of what congress intended, and I

3    would never --

4          THE COURT:  I'm curious.  When people do group

5    messages, group text messages, and they get a big group of

6    people, then that's using an automatic telephone dialing

7    generator?

8          MR. KAZEROUNIAN:  Potentially, and I've heard experts

9    use a cell phone as an example of how broad the FCC has made

10    the definition.  And that's not the analogy I would use per se,

11    but I think you make a valid point.  That's a point well-taken.

12          But going back to the construction of the statute, I

13    think the comma was put in the wrong place, and I think the

14    Ninth Circuit actually clarified that in the *Satterfield*

15    opinion because they actually put the comma after the word

16    "stored," and I think they did that with good reason.

17          Now, what's interesting is that the *Meyer* court, which

18    is another TCPA Ninth Circuit opinion, which came three years

19    after the *Satterfield* opinion -- the *Satterfield* opinion came

20    out in 2009, and then the *Meyer* court came out in 2012.  What

21    the *Meyer* court -- and it was talking about dialers -- is the

22    hardware when paired with certain software has the capacity to

23    store or produce numbers and dialed those numbers at random in

24    sequential order or from a database of numbers.

25          Now, a database of numbers is not in the definition of

the statute, but the Ninth Circuit on purpose added that
language because they are clarifying what the word "store"
means in the definition of what an ATDS is, and if we're going
to stick with Ninth Circuit authority, and I don't think *Meyer*
is necessarily inconsistent with *Satterfield*.  I think it's
going on and explaining what that meant and what the word
"store" meant, and we have to follow the *Meyer* court.

Now, I think what's interesting is that the defense in
their brief were talking about not giving the Chevron Deference
to the FCC opinions.  I don't think the *Satterfield* opinion, A,
is inconsistent with 2003 and 2008 FCC opinions, and even if it
wanted to, I don't think the Ninth Circuit at that particular
time in 2009 had jurisdiction under the Hobbs Act to be able to
overturn the FCC authority and the opinion.

Now, under Hobbs Act, 28 USC 2344, the court of
appeals do have jurisdiction for a very limited period of time
to overrule certain issues that are ruled upon by the FCC, but
that time period is 60 days, and it has to be in a timely
petition, and that issue has to be brought up before the court
of appeals.

District courts, as was recently ruled upon in the
Eleventh Circuit in the *Mais* case -- the Eleventh Circuit said
the district court is bound by the Hobbs Act and the FCC
opinions unless that particular issue in a timely manner under
the Hobbs Act was appealed and overruled by the specific

1   circuit court, and that did not happen in the Ninth Circuit

2   either for the 2003 opinions or the 2008 opinions.

3           Now, what's interesting about the 2003 opinions and

4   the 2008 opinions is that in the 2003 they made it adamantly

5   clear that -- any of the 2008 opinion -- that congress

6   anticipated changes in technology and expected the FCC to guide

7   and comment on the definition as technology progressed, which

8   is exactly what's happening here.

9           So for us to hold that 1991 definition that congress

10  enacted I think is against what the FCC is saying.

11          What the FCC says in 2003 is that, again, it's very

12  similar to the *Meyer* opinion, which interestingly

13  relied -- that I quoted for you earlier directly relied on a

14  2003 FCC opinion which said the hardware when paired with

15  certain software has the capacity to store or produce numbers

16  and dial those numbers at random in sequential order or from a

17  database of numbers.

18          Again, the FCC and the Ninth Circuit are absolutely

19  consistent with each other, and adding that additional

20  language, which is not in the statute, but it's within the

21  FCC's authority to explain what the statute means, and the

22  Ninth Circuit agreed with it.

23          The 2003 opinion further went on, and it said the only

24  thing that differentiates a normal dialer and a predictive

25  dialer is the timing function.  These machines are not

1   conceptually different from dialing machines without the
2   predictive computer program attached, so though they are
3   talking about a predictive dialer, and that's not at issue
4   here, what the FCC is saying is that you have to look at the
5   intent of congress, which is if you have a machine that has the
6   capacity to send messages or phone calls to consumers without
7   human intervention, and the word "human intervention" is used
8   in the 2003 opinion --

9          THE COURT:  Well, but you keep talking in the papers
10  about "without human intervention."  There's human intervention
11  in this case to input the numbers in the first place.  There's
12  human intervention to draft the content of the messages.
13  There's human intervention to say I want these messages to go
14  to these specific inputted numbers.  It's not just any old
15  random generated numbers, I mean, right?  There's human
16  intervention at each of those stages.

17         MR. KAZEROUNIAN:  Yes and no.  If you look at a
18  predictive dialer --

19         THE COURT:  This isn't a predictive dialer.

20         MR. KAZEROUNIAN:  It's not, but if we took that,
21  meaning a predictive dialer would not be an ATDS because in a
22  predictive dialer situation, a list of numbers are uploaded on
23  to -- manually or like somebody has to program certain numbers
24  to be uploaded to the dialer.  That is human intervention,
25  sure, but the machine after that automatically does what

 1    congress was talking about.

 2            THE COURT:  Randomly grabs out numbers?

 3            MR. KAZEROUNIAN:  It can do or just send them in

 4    sequential order, and counsel said no Ninth Circuit circuit

 5    courts have taken this interpretation.  That's incorrect

 6    because subsequent to the *Meyer* opinion, we had the *Gragg*

 7    *versus Orange Cab* case, which was cited in our papers, and what

 8    that case specifically said was, and I'm directing -- I am

 9    quoting directly from the case, "Machines used to dial

10    telephone numbers from a list fall within this statutory

11    definition of ATDS."

12            That's exactly what the -- that's exactly what that

13    case said.  And then we also -- it wasn't a published case, but

14    we added as judicial notice to our papers the *Hernandez* case

15    where Judge Conyers ruled the same way.  He said if you have a

16    list of numbers and you have some kind of machine that

17    automatically dials them, that's an ATDS.

18            And that's exactly what we've got here in the Crunch

19    case, Your Honor.  Because it would be contrary to

20    congressional intent if we started using semantics like commas

21    or saying you know what?  It doesn't generate -- it doesn't

22    generate sequentially or randomly numbers because that is

23    outdated, and that's not what congress meant because hardly any

24    machines that I'm aware of, and I do this on a very regular

25    basis, do that anymore, and the FCC has commented on that.

1          Technology has moved on, and in the 2003 FCC opinion

2    it stated that that's outdated method of marketing.  Nobody

3    does that anymore.  And we have to look at what congress

4    wanted.  If it's calling without human intervention

5    automatically to consumers, that's got to be an ATDS.

6          THE COURT:  Okay.  Thank you.

7          Counsel.

8          MR. BALLON:  Thank you, Your Honor.  A lot of points

9    to respond to.

10          Let me start at the beginning.  I think probably the

11    most important point is plaintiff's counsel's concession where

12    he believes the Ninth Circuit was wrong in the *Satterfield*

13    decision, and they didn't actually have authority to decide as

14    they did that when the statute is unambiguous, you don't look

15    past FCC rulings.  The problem with that argument is that is an

16    argument that needs to be addressed to the Ninth Circuit.

17          After summary judgment is granted, if the plaintiff

18    chooses to appeal, that's really the venue to say that

19    *Satterfield* is wrongly decided.  I believe it's on point, and

20    it's controlling, and I think it's very telling that

21    plaintiff's argument really depends in part on telling the

22    Court that the Ninth Circuit just -- they overlooked these FCC

23    documents.

24          Now, plaintiff's counsel referred to the Hobbs Act,

25    and the -- part of it is because the Seventh Circuit takes a

1  different approach to TCPA cases than the Ninth Circuit, but

2  here in the Ninth Circuit, *Satterfield* is what controls.

3        But even if we were in the Seventh Circuit and the

4  Seventh Circuit and Illinois cases that they cited which say

5  that under the Hobbs Act, a court is bound to apply an FCC

6  ruling, the Seventh Circuit cases that they cite, as we note in

7  our reply brief, are very consistent in saying you only

8  apply -- even in the Seventh Circuit, you only apply those FCC

9  rulings if they're on point and controlling.  And plaintiff's

10  counsel conceded that what we're talking -- what they are

11  referring to is a 2003 decision addressing predictive dialer

12  with latent capability.

13        If you look at the -- if you look at the FCC rulings

14  and you read through them, the FCC is very clear.  They're not

15  saying they're supplanting the statutory ruling.  They still

16  say you have to have the capacity to generate numbers.  They're

17  addressing a very specific context, which is predictive dialer,

18  and that is not a predictive dialer.  And so even under the

19  Hobbs Act, you can't then expand it.

20        This is not like -- this is not the common law.  If

21  this were a negligence case, then you could look to language in

22  a footnote, you could look to other things, and you could

23  expand the common law.  This is a statute.  This is a statute

24  from congress.  The statute has been construed by the Ninth

25  Circuit to say it's unambiguous and we have to apply it.  And

1    to say that the Ninth Circuit was wrong, that we need to look
2    to a footnote from an FCC decision and we should expand that
3    further because the congressional intent was to read it broadly
4    I think looks at things backwards.

5    We've got a statute.  The FCC has limited jurisdiction
6    to construe -- to address specific points.  The CFR rule on
7    what an ATDS does not include all of this language of human
8    intervention, and getting back to the grammar of the statute
9    itself, first of all, the Ninth Circuit did not change the
10   grammar.  I pulled up -- my colleague pulled up the case on the
11   computer.  The Ninth Circuit actually repeats the exact statute
12   with the grammar from the statute, but then says that it's not
13   storage, it's not production, and it's not sequential number
14   generator.

15   And the point is it's none of the above.  If you look
16   at the statute, the statutory definition of "store or produce
17   telephone numbers to be called using a random or sequential
18   number," you could think of it as A or B plus C.  It has to
19   store or produce telephone numbers, and it has to be done using
20   a random or sequential number generator.  And the -- if we were
21   to accept the plaintiff's definition, it would essentially
22   write ATDS out of the statute.  It would have been sufficient
23   for congress to say that the statute applies any time numbers
24   are stored.  And that can't be the case because then why
25   even -- why even have this broader definition of ATDS?  If

1   storage alone were sufficient, then there wouldn't be an issue.
2   And congress back in 1991 was not concerned with storage.  They
3   were concerned about marketers engaged in invasive
4   telemarketing that was disruptive to people.  And that kind of
5   disruption doesn't come from -- doesn't come solely from
6   storage.  It's the generation of numbers randomly or
7   sequentially and the storage or production.  So it's A or B
8   plus C.

9          But the Ninth Circuit in *Satterfield* did not change
10  the grammar.  And *Meyer* was a case where the defendant conceded
11  that the technology at issue was a predictive dialer.  So yes,
12  it was a predictive dialer; therefore, the Ninth Circuit was
13  correct to look at the FCC ruling addressing predictive dialer,
14  but this is not a predictive dialer here, and so it's a
15  different situation.

16         Similarly *Gragg V Orange Cab*, the plaintiff cited an
17  earlier opinion in that case, motion to dismiss, where the
18  Court said the plaintiff stated a claim and the case could go
19  into discovery.  What the plaintiff didn't say, and we didn't
20  mention in our reply -- we only had ten pages, but since the
21  plaintiff's counsel brought it up, I think it's important to
22  alert the Court there was a subsequent decision in 2014, and in
23  that case, as in this *Dominguez* case that we cited, and we
24  think as in this case, the Court actually entered summary
25  judgment for the defendant finding that there was no ATDS, and

1   we can provide the cite for that case.  Again, it's

2   995 F.Supp.2d 1198.  But I think -- and then *Hernandez* was a

3   case involving a predictive dialer.  So, again, if this were a

4   predictive dialer case, then we would look to the FCC, but it's

5   not a predictive dialer case, and we think that under

6   *Satterfield,* we're entitled to summary judgment and that the

7   *Dominguez* case that we cited, even though it's a case from

8   Philadelphia, it applies Ninth Circuit law, and it reaches that

9   same result.

10          The one other thing that I would just raise for the

11  Court is we have moved to strike the plaintiff's experts

12  declaration.  That's been briefed.  It's fully briefed.  But I

13  wanted to also just address that and whether -- whether the

14  experts' testimony is excluded or included, we still believe

15  either way we're entitled to summary judgment because it is, as

16  the Court agreed -- it comes down to a legal question.

17          THE COURT:  Okay.  Thank you.  You can expect a

18  decision I would think in the next week or two, so -- at least

19  on the motion for summary judgment.

20          Okay.  Thank you very much.

21          MR. BALLON:  Thank you.

22      (Proceedings concluded at 2:33 p.m.)

23                          ---000---

24

25

14-CV-348-BAS
23

```
 1                    C-E-R-T-I-F-I-C-A-T-I-O-N

 2

 3          I hereby certify that I am a duly appointed, qualified

 4   and acting official Court Reporter for the United States

 5   District Court; that the foregoing is a true and correct

 6   transcript of the proceedings had in the aforementioned cause;

 7   that said transcript is a true and correct transcription of my

 8   stenographic notes; and that the format used herein complies

 9   with the rules and requirements of the United States Judicial

10   Conference.

11          Dated November 14, 2014, at San Diego, California.

12

13

14                    /s/ Dana Peabody
                      _____
15                    Dana Peabody,
                      Registered Diplomate Reporter
16                    Certified Realtime Reporter

17

18

19

20

21

22

23

24

25
```